W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

The SOUTHERN PICKERY, INC., Defendant.

Civ. No. 67–23.

United States District Court
W. D. Tennessee, W. D.

Jan. 5, 1968.

Jeter S. Ray, Office of Solicitor, U.S. Dept. of Labor, Nashville, Tenn., for plaintiff.

John T. Wilkinson, Jr., Memphis, Tenn., for defendant.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

In this case the Secretary of Labor, as plaintiff, seeks to enjoin the corporate defendant, The Southern Pickery, Inc., from violation of the overtime requirements of the Fair Labor Standards Act of 1938, as amended.

The defendant asserts that it is exempt from the overtime provisions of the Act because its business activity qualifies it for an exemption granted to cotton ginners.

The Fair Labor Standards Act as originally enacted and certain amendments thereto have incorporated variously worded exemptions pertaining to cotton ginning. This lawsuit was filed two days before February 1, 1967, the effective date of the 1966 amendment to the Act, which amendment was enacted September 23, 1966. The allegations set forth in the complaint are based upon activities of the defendant prior to the effective date of the 1966 amendment. However, because the ruling of this Court shall be prospective, this opinion will consider the exemption set forth in § 13(b) (15) of the Fair Labor Standards Act as amended in 1966, effective

February 1, 1967, 29 U.S.C. § 213(b)(15). This exemption applies to:

"any employee engaged in ginning of cotton for market, in any place of employment located in a county where cotton is grown in commercial quantities, * * *."

The defendant operates a business which is a significant adjunct to the cotton industry. The number of pickeries in the United States is relatively few, being not more than a total of twelve, and four of them are in the City of Memphis, Tennessee, due to the prominence of the cotton industry in this region. A "pickery" processes lint cotton for sale in the cotton market to mills and other buyers of cotton. The proof establishes that the defendant buys cotton which invariably has been previously "ginned". It is purchased from various sources and is in different forms. A significant amount of the defendant's product is baled cotton which has been damaged by fire or water. It is the function of the defendant to dismantle the bale, discard the damaged portions and reprocess the undamaged cotton after it has been dried or otherwise salvaged with blends of cotton of like or, on numerous occasions, of a disparate staple. Another source of cotton for the defendant is from warehouses and cotton merchants. This cotton is loose and bulky and usually is handled in burlap bags which, when filled, are known as "snakes". The defendant also blends this cotton and cleans and bales it.

The equipment of the defendant is "gin" equipment which cleans the lint and bales it during which process saws and combs are used. Significantly, the defendant's "gin" equipment does not include the necessary parts which remove cotton seed from the lint. The defendant does not handle or process any cotton from which the seed has not already been removed. Defendant obtains from farmers a small amount of cotton which it processes. However, in these instances this is cotton which has been previously ginned by the farmers but has been damaged or is in need of reprocessing or rebaling for other reasons.

Defendant is essentially a buyer of damaged cotton and a seller of reprocessed, baled cotton. Therefore, the defendant is competing in the cotton market with the farmer as an owner of first processed cotton. It should be noted that reprocessed cotton sold by the defendant is not necessarily a poor grade of cotton. The blended bales can be and are often superior to some cotton as originally produced and ginned.

Both parties rely upon the Interpretative Bulletin of the plaintiff in force at the time of the filing of the lawsuit and at the time of the trial. 29 CFR § 780.500, et seq. (Revised 1–1–67). These regulations are based upon provisions of the Fair Labor Standards Act prior to the adoption of the 1966 amendment. However, § 13(b)(15) of the Act, as amended in 1966, is worded the same as former § 13(a)(18). Section 780.503 of the Interpretative Bulletin provides as follows:

"Under section 13(a)(18) [now 13(b)(15)] of the Act all the following conditions must be met in order for the exemption to apply to an employee:

(a) He must be 'engaged in ginning'.

(b) The commodity ginned must be cotton.

(c) The ginning of the cotton must be 'for market'.

(d) The place of employment in which this work is done must be 'located in a county where cotton is grown in commercial quantities'. The following sections discuss the meaning and application of these requirements."

In light of the business of the defendant, as shown by the proof, the Court finds that the commodity processed by the defendant is cotton; that it is processed for the market, and that the work is done in a county where cotton is grown in commercial quantities. Therefore, it is the opinion of this Court that the determination of the issues of

this lawsuit rest upon the meaning of the words "ginning" and "ginned".

According to the proof and Interpretative Bulletin, a significant portion of the operations referred to as "ginning" in the cotton industry is the separation of the seeds from the fiber. The cotton is harvested with the seed and trash in the harvested product. The cotton is then taken to a gin where the seeds are removed therefrom and it is cleaned and tightly packed in bales. This operation is performed so that the farmer will have his cotton in a marketable state for sale by himself to various buyers, including, often times, the ginner, or the farmer may store the cotton until a higher market price is available. The process at the gin is the first process within the meaning of the Interpretative Bulletin.

The defendant relies upon that portion of the Interpretative Bulletin which provides as follows:

"Ginning, as used in the exemption, includes reginning and rebaling where necessary, as in the case of damaged or loose cotton, since these operations are performed in the same way and for the same purpose as the original ginning."

Although it is true the defendant does reprocess the cotton through some equipment used in gins and, to that extent, regins it and rebales the cotton, the operations of the defendant are not performed the same way nor are they for the same purposes as the original ginning. The purpose of the original ginning is to render the farmer's product marketable. The purpose of the defendant's operation is to have its own cotton, which has been purchased in damaged or discarded form, for the defendant's account as a merchant of reclaimed, salvageable cotton.

■ The employer has the burden of proving the application of an exemption set forth in the Act to the operation of the employer's business. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807,

89 L.Ed. 1095; Yogurt Master, Inc. v. Goldberg, 310 F.2d 53 (C.A. 5, 1962).

■ Upon consideration of the entire record, this Court is of the opinion that the defendant has failed to establish that its pickery operations are within the meaning of the exemption relied upon by it.

■ Defendant further relies upon prior interpretations of the Act by representatives of the U. S. Department of Labor. Defendant relies upon the letter dated 9–10–40 from Charles H. Livingood, Jr., Regional Attorney for the Department of Labor, addressed to the head of the defendant company, wherein Mr. Livingood advised the defendant that it was not subject to the overtime provisions of the Act then in force. This was based upon section 7(c) of the Act. Defendant relies further upon the letter dated January 6, 1950, from William R. McComb, Administrator of the Wage and Hour and Public Contract Division of the Department of Labor, wherein Mr. McComb responded to an inquiry of Newell N. Fowler, Esq., Attorney for the defendant and other pickeries in Memphis. The letter of Mr. McComb states that the 1949 amendments to the Act did not necessitate a change in the position set forth in the Livingood letter written ten years earlier. Mr. McComb again referred to section 7(c) of the Act in its former form. By letter of October 27, 1966, Clarence T. Lundquist, Administrator of the Wage and Hour and Public Contract Division of the Department of Labor, advised the defendant that the Department of Labor no longer considered pickery operations exempt from the Act.

This Court is of the opinion that these prior statements did not prohibit plaintiff from seeking the injunction sought under the facts of this case and at this time.

It is, therefore, the opinion of the Court that the plaintiff have an injunction against further violations of the overtime provisions of the Act, as prayed for in the complaint, and that an appropriate order should be prepared for entry in the cause.